UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ANDREW RODNITE, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**HOVNANIAN ENTERPRISES, INC., et al.,**<br><br>Defendants. | Civil Action No. 08-3787 (JAP)<br><br>**OPINION** |

Presently before the Court is a motion brought by Plaintiffs, Andrew and Ellen Rodnite, ("Plaintiffs"), seeking leave to file a Third Amended Complaint ("Third Amended Complaint" or "TAC"), adding counts against Defendant MI Windows & Doors Inc. ("MI Windows") for breach of warranty, strict liability and consumer fraud. [Docket Entry No. 81]. Plaintiffs also seek to expand the factual predicate of the complaint, and add MI Windows to the products liability count previously asserted against Defendants Hovnanian Enterprises, Inc., Hovnanian Homes, Inc., and Khovnanian at Little Egg Harbor, LLC (collectively, the "Hovnanian Defendants"). For the reasons set forth below, the Court denies Plaintiffs' request to amend to add causes of action for breach of warranty, strict liability, and consumer fraud against MI Windows. The Court grants Plaintiffs' request to amend the factual allegations, and also to amend Count Seven to assert a products liability claim against Defendant MI Windows.

**I.      Relevant Facts and Procedural History**[1]

Plaintiffs purchased a newly constructed home from the Hovnanian Defendants on or

---

[1] Because the Court's analysis in deciding this motion for leave to amend must focus on the sufficiency of the allegations of the proposed new pleading, the facts set forth are from the proposed Third Amended Complaint. See discussion on page 4, infra.

about May 29, 2007.  TAC 1 at ¶10.  Plaintiffs allege that their home was non-conforming in a number of ways.  TAC at ¶¶ 20-25, 28.  Of particular relevance to this motion, Plaintiffs allege that the exterior vinyl siding on their home "was warping, buckling and, in effect, literally melting, causing a failure of the exterior siding on the wall, apparently from heat generated as a result of solar reflection on the lower windows of the adjacent house . . . ."  TAC at ¶ 25.  Plaintiffs repeatedly complained of the problem of melted siding but allege that "[d]espite repeated demands by plaintiffs to defendants to effectively repair the damage to the vinyl exterior siding, defendants have through the filing of this action and thereafter taken no action to do so."  TAC at  ¶ 29.  Plaintiffs later recognize that some of the damaged siding and a portion of the offending windows on the neighboring home have been replaced, but contend that this has not effectively solved the continuing problem presented by reflected solar energy.  TAC at  ¶¶ 65-66.

On or about July 30, 2008, Plaintiffs filed a complaint in federal court against the Hovnanian Defendants and individual Defendant John Carbone, based on diversity jurisdiction under 28 U.S.C. 1332.  [Docket Entry No. 1].  The Hovnanian Defendants and John Carbone moved to dismiss counts 4 and 6 of the complaint and John Carbone as an individual defendant.  [Docket Entry No. 30].  By Order dated September 9, 2009, the Court granted the motion to dismiss John Carbone as an individual defendant, and also dismissed counts 4 and 6.  The Court further permitted Plaintiffs to amend the complaint.  [Docket Entry No. 51].

On September 21, 2009, Plaintiffs filed the First Amended Complaint [Docket Entry No. 52], which for the first time identified MI Windows as a defendant.  MI Windows filed a motion to dismiss. [Docket Entry No. 54].  In response, Plaintiffs filed a Second Amended Complaint, which was later stricken and re-filed as a Motion for Leave to File the Second Amended

Complaint [Docket Entry Nos. 61, 66, and 83], which MI Windows opposed. [Docket Entry Nos. 67 and 68]. With regard to Plaintiffs' proposed Second Amended Complaint, this Court issued a Report and Recommendation [Docket Entry Nos. 71 and 72], an appeal of which was later converted into a motion for reconsideration [Docket Entry Nos. 75, 77]. The motion for reconsideration was rendered moot by Plaintiffs' Motion for Leave to File a Third Amended Complaint, which is currently before the Court. [Docket Entry No. 81].

The Court conducted a hearing on the motion for leave to amend on July 1, 2010. Prior to the hearing, the parties had already submitted considerable briefing on the issues raised, with regard to the motion to dismiss, the motion for leave to file the second amended complaint, and the present motion. See [Docket Entry Nos. 54, 55, 67-68, 75, 79, 81, 82, 84, 87, 88, 89, 90, 92, 94, 95, 96; see also Docket Entry No. 100, advising the Court of a recently decided case].[2] The prior briefing was incorporated by reference into this motion. See, e.g., Docket Entry No. 87 (MI Windows' Brief opposing leave to file the Third Amended Complaint, n. 1).

In the proposed Third Amended Complaint, Plaintiffs seek to elaborate on certain counts, including the products liability count (Seventh Count) insofar as it pertains to Defendant MI Windows, and to add counts against MI Windows for breach of warranty (Eighth Count), strict liability (Ninth Count), and consumer fraud (Eleventh Count). TAC at pp. 14-19. MI Windows has mounted a vigorous opposition to the motion, contending that the proposed amendments are

---

[2]At the hearing on July 1, counsel for Plaintiffs requested leave to submit the citation for a case referenced during argument, which the Court granted. Plaintiffs submitted a one-page letter later that day. [Docket Entry No. 97]. On July 5, 2010, counsel for MI Windows submitted a 27-page letter brief, purportedly in response to Plaintiffs' letter, as well as to cases cited during oral argument. [Docket Entry No. 98]. The Court finds that the parties had ample opportunity to brief the issues prior to the hearing, and declines to consider the 27-page submission.

futile and have been brought with undue delay.  In addition, MI Windows argues that Plaintiffs cannot satisfy the minimum amount in controversy required to invoke diversity jurisdiction as to MI Windows.  See [Docket Entry Nos. 68, 82, 87, and 89].

## II.     Standard of Review

Pursuant to Federal Rule 15(a)(1), a party has a limited time within which to amend its pleading once as a matter of course.  After that, a party must either have consent from the opposing party or leave of court to amend a pleading.  Fed. R. Civ. P. 15(a)(2).  The Court, however, should give leave freely when justice so requires.  Id.; Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).  In the absence of "undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment," the amendment must be permitted.  WHY ASAP, LLC v. Compact Power, 461 F. Supp. 2d 308, 311 (D.N.J. 2006) (quoting Grayson v. Mayview State Hosp., 293 F. 3d 103, 108 (3d Cir. 2002)).

An amendment that fails to state a claim upon which relief can be granted is futile.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  The standards for denying leave to amend based on futility and granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6) are identical.  See In re Burlington Coat Factory Sec. Litig., supra, 114 F.3d at 1434; Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983).  In determining whether an amendment is indeed futile, the court "must accept as true all factual allegations contained in the proposed amended complaint and any reasonable inferences that can be drawn from them," Travelers Indem. Co. v. Dammann & Co., Inc., 592 F. Supp. 2d 752, 763 (D.N.J. 2008), but the court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations."  Baraka v. McGreevey, 481 F.3d 187, 211 (3d Cir.

2007). Thus, a plaintiff's amendment "must plead sufficient factual matter accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949.

**III.    Analysis**

    **A.    Consumer Fraud Act, Strict Liability and Implied Warranty**

MI Windows opposes Plaintiffs' proposed claim under the Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. (the "CFA"), arguing that it is futile given that any CFA claim is subsumed by Plaintiffs' product liability claim. MI Windows further argues that Plaintiffs have not pled a consumer fraud claim with the particularity required under Federal Rule of Civil Procedure 9(b), and that Plaintiffs have acted with undue delay in bringing the claim.

In New Jersey, the Product Liability Act, N.J.S.A. 2A:58C-1, et seq. (the "PLA") is the sole statutory cause of action available to a plaintiff prosecuting a product liability claim. Estate of Knoster v. Ford Motor Co., 200 Fed. Appx. 106, 115 (3d Cir. 2006) (quoting Tirrell v. Navistar Int'l, Inc., 248 N.J. Super. 390, 398 (App. Div. 1991)). Thus, all causes of action that are brought for harm caused by a product, irrespective of the underlying theory (with the limited exception of certain breach of express warranty claims), are subsumed by the PLA. See N.J.S.A. 2A:58C-1(b)(3); Fellner v. Tri-Union Seafoods, LLC, 2010 WL 1490927 *4 (D.N.J. 2010) ("'[I]f the facts of a case suggest that the claim is about defective manufacture, flawed product design, or failure to give an adequate warning, then the PLA governs and the other claims are subsumed'") (quoting New Hope Pipe Liners, LLC, v. Composites One, LLC, No. 09-3222, 2009 WL 4282644, *2 (D.N.J. Nov. 30, 2009)). To determine whether the PLA subsumes a particular

claim, courts examine the essential nature of the claim presented and decide whether the claim would traditionally be considered a products claim. New Hope Pipe Liners, LLC, supra, 2009 WL 4282644 at *2-3.

MI Windows argues that the PLA subsumes Plaintiffs' CFA claims and, as such, any amendment to add the CFA is futile and should be denied. [Docket Entry. No. 89 at p. 2]. Plaintiffs argue that the PLA does not subsume the CFA claims because they have pled a representation-based claim similar to that alleged in New Hope. [Docket Entry No. 90]. At oral argument, counsel for MI Windows argued that New Hope does not bind this Court, and in any event, it was wrongly decided to the extent that it carved out an exception for representation-based warranties. This Court disagrees with MI Windows' assessment of the validity of the New Hope holding, but finds that New Hope must be distinguished, given that the type of exception contemplated by the Court in New Hope has not been adequately pled here.

In New Hope, the plaintiff used resins sold by the defendant Composites One as part of its installation of pipe lining. Id. at *1. With regard to the purchase at issue, Composites One told the plaintiff that the price of the resin it typically used had increased, but that it had a different resin that would perform as well as the original one. Id. Both Composite One and the manufacturer of the resin assured the plaintiff that the substitute resin was appropriate for the particular use for which the plaintiff needed it. Id. Based on those representations, the plaintiff purchased the substitute resin. Id. After using it, however, the plaintiff learned that it was not in fact suitable for its pipe lining projects and brought suit, alleging that the defendants had affirmatively misrepresented the suitability of the alternate resin for the plaintiff's particular projects. Id. The Court, in finding that the misrepresentation claim was not subsumed by the

6

PLA, noted that

> [t]raditional products liability claims arise out of the situation where a product fails to perform as would ordinarily be expected in the absence of any specific promises made by the seller or manufacturer. Representation-based claims, by contrast, deal with the situation where a product does not conform to specific representations made directly to the buyer. Since representation-based claims and products liability claims deal with two distinct categories of unlawful conduct rather than two different theories covering the same underlying conduct, the PLA does not subsume representation-based claims.

Id. at *3. Thus, in New Hope, it was the defendants' affirmative misrepresentations that distinguished the plaintiff's allegations from those that traditionally state a products liability claim. Id. at *1, 3.

A review of the proposed Third Amended Complaint makes clear that Plaintiffs do not plead that MI Windows made affirmative misrepresentations similar to those made by the defendants in New Hope. Rather, Plaintiffs allege in conclusory fashion that MI Windows made "certain representations and warranties" to the Hovnanian Defendants as to the "merchantability, suitability for the purpose intended, desirability, efficiency, quality and freedom from defect or danger," of their low-e windows [TAC at pp. 17-18, ¶76], that the low e-windows "were defective and were neither merchantable nor suitable for their intended purpose . . . nor free from defect or danger," [TAC at p. 18, ¶78], and that MI Windows "fail[ed] to disclose the propensity of said windows to thermally distort and damage vinyl siding." [TAC at p. 18, ¶79]. The "essential nature" of Plaintiffs' allegations go to alleged design defects, manufacturing defects, and the failure to warn, which, as the Court in New Hope explained, are considered product liability claims. New Hope Pipe Liners, LLC, 2009 WL 4282644 at *2-3. Because Plaintiffs

7

fail to set forth any affirmative misrepresentations, the claim cannot fall within the limited exception articulated in New Hope.  The Court therefore finds that Plaintiffs' CFA claim is subsumed by the PLA.  As a result, any amendment to add a consumer fraud count is futile, and the Court denies Plaintiffs' request to amend the Complaint to add the Eleventh Count.

Neither party briefed the issue of whether the alleged breach of implied warranty and the strict liability causes of action should be allowed.  At oral argument, Plaintiffs' counsel conceded that these claims are in fact subsumed by the PLA.  Even without Plaintiffs' concession on this point, however, these Counts would not be allowed to proceed in light of the clear recognition that such claims are subsumed by the PLA.  Shannon v. Howmedica Osteonics Corp., 2010 WL 421096, *2 (D.N.J. Feb. 1, 2010); Brown v. Philip Morris Inc., 228 F. Supp. 2d 506, 516 (D.N.J. 2002).  Accordingly, Plaintiffs' motion for leave to add the Eighth and Ninth Counts of the Third Amended Complaint is denied.

MI Windows also asserts that the amendment to add a consumer fraud count must fail for lack of specificity in the pleading and as a result of Plaintiffs' undue delay in bringing the claim.  Because this Court has already determined that the CFA claim set out in the Eleventh Count of the Third Amended Complaint is subsumed by the PLA, it will not address the alleged failure to plead fraud with sufficient particularity.

Similarly, MI Windows' argument that Plaintiffs unduly delayed bringing the CFA claim is moot, given this Court's determination that the CFA is subsumed by the PLA.  To the extent this argument relates to other aspects of the proposed Third Amended Complaint, however, the Court notes that although the initial complaint was filed in 2008, this case still has not had an initial conference, largely due to ongoing motion practice relating to the pleadings, including

repeated motions to dismiss and motions for leave to amend.  The Court further notes that despite the passage of time, discovery has yet to begin.  In addition, MI Windows has been on notice that it may be brought into this suit since at least November 2008, when it was served with the Third Party Complaint by the Hovnanian Defendants [Docket Entry No. 13] which was later withdrawn. [Docket Entry No. 43].  The Court cannot find that the responsibility for the delay lies solely at the feet of the Plaintiffs, nor can it conclude that any party would be prejudiced by allowing the amendment to proceed at this point in the litigation simply because of delay.

### B. Jurisdictional Amount of Claims Asserted Against MI Windows

MI Windows asserts that the Third Amended Complaint fails to establish that Plaintiffs' damages meet the jurisdictional amount for diversity as to Defendant MI Windows.  They argue that the jurisdictional amount must be alleged separately as to each Defendant, unless liability is shown to be joint and several.[3] [Docket Entry No. 82 at p. 14].  MI Windows therefore asserts that the motion for leave to amend should be denied because the amendment is futile for failure to meet the jurisdictional amount.  Because the Court has already determined that the other causes of action sought to be added will not be allowed, the jurisdictional amount analysis is limited to the PLA claim.

The basis of Plaintiffs' products liability claim is that the adjacent house, which was manufactured and sold by the Hovnanian Defendants, and more specifically the low-e windows manufactured and sold by MI Windows, caused harm to Plaintiffs by "reflect[ing] solar energy

---

[3]While Plaintiffs contend that MI Windows is jointly liable with the Hovnanian Defendants, that joint liability is only claimed for the breach of warranty (which is subsumed in the PLA claim) and for the product liability claim itself.  As a result, even if there were joint and several liability, it would not expand the damages asserted against MI Windows. [Docket Entry No. 79 at p. 3].

on the siding on the plaintiffs' premises thereby causing it to be damaged by thermal distortion." [Docket Entry No. 81 at p. 14, ¶¶61-62.] Plaintiffs therefore assert that the adjacent house and low-e windows were not reasonably fit, failed to contain adequate warnings, and were defective in design. [Docket Entry No. 81 at pp. 14-15, ¶63].

Although "[g]enerally, the allegations on the face of a complaint control the amount-in-controversy calculation," Goralski v. Shared Technologies, Inc., No. 09-2461, 2009 WL 2460752, at *2 (D.N.J. Aug. 7, 2009), where that amount is challenged by an opposing party, the party invoking federal jurisdiction must provide evidence justifying that claim. Independent Mach. Co. v. International Tray Pads & Packaging, Inc., 991 F. Supp. 687, 690-91 (D.N.J. 1998). As the Third Circuit explained in Samuel-Basset v. Kia Motors America, Inc., 357 F.3d 392, 398 (2004), where disputes over factual matters are involved, courts employ the standard articulated in McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936), which requires the party alleging jurisdiction to "justify his allegations by a preponderance of the evidence." Essentially, the party must support its claim of jurisdiction with competent proof. Kvos v. Assoc. Press, 299 U.S. 269, 278 (1936); Thomson v. Gaskill, 315 U.S. 442, 446 (1942).

In light of this Court's conclusion that the consumer fraud, strict liability and breach of warranty claims are subsumed by the PLA, this Court must now consider Plaintiffs' damages under that cause of action. Under the PLA, damages are available "for harm caused by products." N.J.S.A. 2A:58C-1(a). Harm is in turn defined by the statute as:

> (a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c).

N.J.S.A. 2A:58C-1(b)(2).

Plaintiffs present two scenarios for their alleged damages under the PLA. Under the first, they contend that they are entitled to a permanent resolution for the melting of their siding, a resolution that leaves them with a uniform appearance to the house. [Docket Entry No. 79 at pp. 4-5, 19 at ¶12; Docket Entry No. 88 at p. 13]. In this regard, they contend that they are entitled to have the house re-sided with a material that is impervious to melting. [Docket Entry No. 79 at p. 4]. Plaintiffs have obtained an estimate that puts the cost of re-siding the house at $65,000. [Docket Entry No. 79 at pp. 4-5; Certification of A. Rodnite Exh. B at pp. 28-29]. In addition, they seek compensation for various other elements of damages, including the costs incurred in planting and maintaining shrubs to deflect the reflection until a permanent solution is implemented. [Docket Entry No. 79 at pp. 4-5]. Thus far, they have spent $800 on shrubbery but anticipate that this cost will increase. [Docket Entry No. 79 at pp. 4 and 21, ¶17].

Plaintiffs also seek damages for the inconvenience they have suffered, the loss of use of their home, and their own pain and suffering. [Docket Entry No. 79 at pp. 5, 16-24; Docket Entry No. 88 at p. 13]. They state that they are deeply embarrassed as to the house's appearance [Docket Entry No. 79 at p. 17, ¶4; Docket Entry No. 88 at p. 13] and at oral argument, Plaintiffs' counsel indicated that they are embarrassed to entertain in their house because of the melted siding. They have also submitted a certification of their good faith belief that their damages, including the cost of re-siding the house and the value of their pain and suffering, will exceed $75,000. [Docket Entry No. 79 at p. 24, ¶24].

In their alternative view of their damages, Plaintiffs argue that if the house is not completely re-sided, they will continue to be at risk of having their siding melt and will continue

11

to incur replacement damages. [Docket Entry No. 79 at pp. 4-5 and 21-22, ¶21].  This continuing problem, they argue, would require them to disclose the defective state of the house at the time of any sale, and would cause a diminution of the value of their home. [Docket Entry No. 79 at pp. 22-22, ¶¶21, 22].  They add to this their other elements of damages, including the costs of shrubbery, their loss of use, inconvenience, and pain and suffering. [Docket Entry No. 79 at p.5].

In response, MI Windows argues that Plaintiffs cannot satisfy the $75,000 minimum amount in controversy, even accepting Plaintiffs' need for concrete siding at a cost of $65,000. [Docket Entry No. 82, pp. 36-48; Docket Entry No. 96].  MI Windows contends that Plaintiffs cannot base their damages on "speculative future harm," nor may they recover under the PLA for mental anguish because the PLA does not permit such a claim for property damage, and Plaintiffs have not pled mental anguish sufficiently under New Jersey standards.  [Docket Entry No, 96 at pp. 6-7].

The Court can find no basis for the assertion that Plaintiffs, if successful with their PLA claims, could not recover for any emotional distress they have suffered.  N.J.S.A. 2A:58C-1(b)(2)(c) expressly contemplates that the harm compensable under the Act includes "pain and suffering, mental anguish or emotional harm."  While Plaintiffs did not expressly include pain and suffering or emotional distress in the Seventh Count of the Third Amended Complaint, they have sufficiently asserted it in the submissions on their motion for leave to amend.  They do not need a separate count for emotional distress under the PLA, given that it is a damages component, not a separate cause of action.  Nonetheless, the Court agrees with MI Windows that going forward, the pleadings should contain a clearer indication of the elements of damages sought under the PLA.  Plaintiffs are therefore directed to include a more precise statement of the

damages sought in the Seventh Count of the Third Amended Complaint, which is to be revised in accordance with this Opinion and the accompanying Order.

MI Windows further contends that Plaintiffs have not submitted competent proof of their losses, of the type required on a motion for summary judgment. [Docket Entry No. 92 at p. 6.] In support of this contention, MI Windows points to a number of cases addressing the burden of the parties in jurisdictional disputes. [Docket Entry No. 92 at pp. 4-10]. The Court first notes that a number of the cases cited by MI Windows relate to issues other than the amount in controversy in diversity cases. See Hertz Corp. v. Friend, 130 S. Ct. 1181 (Feb. 23, 2010) (domicile); Tanzymore v. Bethlehem Steel Corp., 457 F.2d 1320 (3d Cir. 1972) (domicile); International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc., 673 F.2d 700 (3d Cir. 1982) (non-diversity arbitration issue); Cohen v. Kurtzman, 45 F. Supp. 2d 423 (D.N.J. 1999) (domicile); Holman v. Carpenter Technology Corp., 484 F. Supp. 406 (E.D. Pa. 1980) (domicile); Rashid v. U.S., 170 F. Supp. 2d 642 (S.D.W. Va. 2001) (non-diversity federal question jurisdiction issue).

Furthermore, even those cases relied upon by MI Windows that address the jurisdictional amount can be readily distinguished. For example, a number of the cases cited deal with contract disputes, which often present the parties with the ability to place a precise number on damages. Thomson v. Gaskill, 315 U.S. 442 (1942); Nguyen v. Allstate Ins. Co., 2007 WL 274799 (E.D. La. 2007). In contract cases, it is not unreasonable to expect the party seeking federal jurisdiction to attach copies of the contract at issue or to otherwise quantify the value of the contract. Accordingly, in Thomson, supra, 315 U.S. at 446, the Supreme Court noted that neither the pleadings nor the affidavit submitted contained the terms of the parties' agreement, such that

13

support was lacking for their conclusion that damages exceeded the minium amount in controversy. Similarly, in Nguyen, 2007 WL 274799 at *2, neither party provided evidence of the value of the homeowner's policy at issue nor did the parties attach a copy of the policy. Because the claim against MI Windows does not involve breach of a contract for a set amount, these cases are distinguishable.

In other cases cited, the proofs provided demonstrated that exceeding the jurisdictional amount was simply not possible. For instance, in Kvos v. Associated Press, 299 U.S. 269, 277-79 (1936), the Supreme Court concluded that the only attempt the party asserting federal jurisdiction made to meet its burden was a statement that the value of the payments in question exceeded the jurisdictional amount. The Court concluded that the proof was inadequate because the plaintiff stated elsewhere that it received no profit for the rights at issue and therefore suffered no monetary loss. Likewise, the party in Mintzer v. Lester, 51 Fed. Appx. 929, *2 (5th Cir. 2002), only claimed $26,000 in damages but argued jurisdiction was met based on a claimed setoff totaling $176,000. The court, however, found that an affirmative defense such as setoff could not be included in the amount in controversy calculation and the court therefore did not have jurisdiction. Id. Finally, where plaintiffs disavowed that damages exceeded the minimum amount and the only affidavits submitted revealed damages below that requisite amount, the court concluded that the amount in controversy requirement could not be met. Simard v. Lacrimedics Inc., 342 F. Supp. 2d 845, 849 (D. Ariz. 2004).

Finally, MI Windows has cited cases where the proofs were overly vague and ambiguous to the extent that the reviewing courts could not find that the amount in controversy requirement had been met. See, e.g., Encarnacion v. Fedex Ground Package System, Inc., 2009 WL

1953507,* 2-3 (M.D. Fla. 2009) (finding that the party had not met burden on jurisdictional amount by submitting unsworn, unsubstantiated spreadsheets, prepared by an unqualified expert); Valente v. Colonial Life & Accident Ins., 2007 WL 2221048 at *3, *4-6 (E.D. Ca. 2007) (when plaintiff's pleadings did not indicate that the value of the case was over $75,000, removing defendants who only submitted generalized allegations of harm rather than credible evidence did not prove that they met the requisite amount in controversy).

Plaintiffs have submitted an Affidavit in support of their claim of damages, substantiating that it would cost $65,000 to re-side the house. They have also attested to other damages alleged, including the shrubbery costs, the loss of use and enjoyment, and their emotional distress. [Docket Entry No. 79, Rodnite Cert. at pp. 16-24]. MI Windows has not pointed to any case in which a party has alleged and provided evidentiary support for most, indeed, almost 90%, of the jurisdictional amount, and then seeks to satisfy the remaining amount with an affidavit setting forth intangible damages such as emotional distress, embarrassment, loss of use and inconvenience. This Court can find no basis to require Plaintiffs to come forward with the kind of detailed proofs, such as deposition testimony and expert reports, that MI Windows asserts is required at this early stage of the case.

Given the damages claimed and the proofs submitted, the Court finds that Plaintiffs have shown by a preponderance of the evidence that their claim against MI Windows, if successful, could exceed the minimum amount in controversy needed to establish diversity jurisdiction. The Court therefore finds that the proposed amendment with regard to the PLA claim is not futile and should be allowed.

**IV.     Conclusion**

For the reasons set forth above, Plaintiffs' request to amend their Complaint to add causes of action for breach of warranty, strict liability, and under the Consumer Fraud Act is denied. The motion for leave to amend to amplify the factual assertions of the complaint and to name MI Windows in the Seventh Count, which asserts a cause of action under the PLA, is granted. An appropriate Order accompanies this Opinion.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　／s／ Lois H. Goodman
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**LOIS H. GOODMAN**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**

Dated: August 5, 2010